IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **FELIX PARDO, # 98862-004,** | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL NO. 3:16-CV-2629-B-BK |
| | § | |
| **D.J. HARMON,**[1] | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(c) and *Special Order 3*, this case was referred to the United States Magistrate Judge. Petitioner, a federal prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. For the reasons that follow, the petition should be denied.

### I.   BACKGROUND

Petitioner was convicted in the United States District Court for the Southern District of Florida of possessing a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B), and was sentenced to 70 months' imprisonment and a lifetime term of supervised release. Doc. 12 at 12.

In the petition *sub judice*, Petitioner challenges a prison disciplinary proceeding at FCI Miami on due process grounds.[2] Doc. 1 at 3. On October 31 2014, Bureau of Prisons (BOP) staff at FCI Miami conducted a search of Petitioner's cell for extra linens and found between

---

[1] The Court has modified the caption to reflect the Warden of FCI Seagoville, where Petitioner is presently confined, as the Respondent in this action. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (the proper respondent to a habeas petition under § 2241 is "the person who has custody over [the petitioner]."). However, Petitioner may object to this modification/substitution within 14 days after being served with a copy of this report and recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] This action was initially filed in the United States District Court for the Northern District of Florida and then transferred to this Court. Doc. 4.

Petitioner's mattress and steel bed a 17-foot rope made from pieces of linens tied together. Doc. 12-1 at 1, § 11. On the same day, BOP staff wrote an incident report, charging Petitioner with violating BOP Code section 108, "Possession of a Hazardous Tool (Homemade Rope)." Doc. 12-1 at 1, § 9. The report was delivered to Petitioner on November 3, 2014 and during the investigation, conducted that day, Petitioner was informed of his rights, which he stated that he understood. Doc. 12-1 at 2, § 24. Petitioner told the investigator that he did not know anything about the rope and that he was at work at the time of the search. Doc. 12-1 at 2, § 24.

At a Unit Disciplinary Committee (UDC) hearing on November 6, 2014, Petitioner again denied that the rope was his and stated that he was at work during the search. Doc. 12-1 at 1, § 17. The UDC referred the charges to a Disciplinary Hearing Officer (DHO), who conducted a hearing on November 20, 2014. *See* Doc. 12-1 at 1, § 19; Doc. 12-1 at 8, § I. Petitioner was afforded notice of the DHO hearing and his DHO hearing rights, and chose Linda Hill as his staff representative. Doc. 12-1 at 3-5; Doc. 12-1 at 8, § I-II. At the hearing, Petitioner presented no witnesses, stated that he understood his rights, and received a copy of the incident report. Doc. 12-1 at 8-9. Hill, who appeared on behalf of Petitioner, stated that Petitioner only asked her to confirm that he was at work during the search of his cell as he had admitted in an *Inmate Request to Staff*. Doc. 12-1 at 9, § V; *see also* Doc. 12-1 at 5.

At the conclusion of the hearing, the DHO, relying on the statement of the reporting officer and pictures of the rope admitted during the hearing, issued a written decision finding that Petitioner committed the prohibited act alleged. Doc. 12-1 at 9, § IV, V. Further, the DHO found that Petitioner failed to present an adequate defense. Doc. 12-1 at 8-9, § IV-V. The DHO specifically noted that while Petitioner claimed the rope was not in his bed when he left on the morning of the incident, he "made no effort" to ask his staff representative "to review video

footage or make any other inquiries." Doc. 12-1 at 8-9, § IV-V. Based on these findings, the DHO imposed sanctions of 30 days' disciplinary segregation, disallowance of 40 days of good time credit, and six months' loss of commissary privileges. Doc. 12-1 at 9, § VI. Petitioner unsuccessfully pursued a Regional Administrative Remedy Appeal, and his subsequent appeal to the Office of General Counsel was also unsuccessful. Doc. 1 at 13-14.

In this civil court action, Petitioner contends his good conduct time was forfeited in violation of his constitutional right to due process, in that the allegations against him were not proven by sufficient evidence. Doc. 1 at 3. He asserts his staff representative deprived him of a defense by failing to review the camera footage and interview all the inmates who entered his cell the day of the search as Petitioner had requested. Doc. 1 at 7. He also contends that the DHO "wrongfully enhanced" his disciplinary sanctions. Doc. 1 at 3, 7. Petitioner requests the return of the disallowed good conduct time and the expunction of the incident report. Doc. 1 at 6.

## II. ANALYSIS

Under federal sentencing law, prison authorities may award credit to prisoners against their prison time as a reward for good behavior. 18 U.S.C. § 3624(b). Federal prisoners may contest the loss of these so called "good time" credits under 28 U.S.C. § 2241, which is the proper procedural vehicle for a prisoner to challenge "the execution of his sentence rather than the validity of his conviction and sentence." *United States v. Cleto,* 956 F.2d 83, 84 (5th Cir.1992). If, in a case like the one now before the Court, a petitioner "can show that his due process rights were violated in the subject disciplinary proceedings, then § 2241 would be the appropriate remedy to use to restore his good time credits." See *Brown v. Smith,* 828 F.2d 1493, 1495 (10th Cir.1987) (citing *Jackson v. Carlson,* 707 F.2d 943, 946 (7th Cir. 19983)). That is because an inmate may not be deprived of good time credits for a disciplinary violation unless he

3

is afforded due process. *Wolff v. McDonnell,* 418 U.S. 539, 570 (1974). Specifically, the inmate charged with a violation must be given (1) advanced written notice of the charges, (2) the opportunity to appear and call witnesses, (3) the opportunity, in certain situations, to receive the assistance of a fellow inmate or staff, and (4) a written statement by the fact finder as to the evidence relied on for the decision. *Id* at 563-70.

As recounted previously herein, Petitioner was afforded all of the required due process protections during his disciplinary process. Moreover, his vague, conclusory allegation of a violation under *Wolff* is plainly insufficient to raise a constitutional issue. Doc. 1 at 3.

*The DHO's decision was sufficiently supported by the evidence*

Petitioner claims that the DHO's findings were not supported by the "some evidence" standard set forth in *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 454-56 (1983). Doc. 1 at 3. The record does not bear that out, however.

In reviewing an institution's disciplinary actions, the Court need only consider if the decision was supported by "some basis in fact" or "a modicum of evidence." *Hill*, 472 U.S. 454-456; *see also Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981) (citation omitted) (court should consider whether the disciplinary decision is "supported by 'some facts' 'whether any evidence at all' supports the action taken by the prison officials."). Court intervention is necessary only when the DHO's action is "arbitrary or capricious." *Reeves v. Pettox*, 19 F.3d 1060, 1062 (5th Cir. 1994). Moreover, the evidence need not eliminate all other conclusions, nor does the "some evidence" standard require a weighing of the evidence or an independent assessment of witness credibility. *Hill*, 472 U.S. at 454-56. An incident report alone can constitute some evidence. *See Johnson v. Hudson*, 242 F.3d 534, 536-37 (5th Cir. 2001).

Contrary to Petitioner's assertions, there was clearly "some evidence" to support the DHO's finding in the present case. The DHO relied on the officer's firsthand account of the search and discovery of the prohibited homemade rope under Petitioner's mattress. Doc. 1 at 19, § V. And while Petitioner argues that his cell was occupied by three men total, accessible by over 100 other men in the unit, and occupied by other prisoners at the time of the search, Doc. 1 at 7, those facts do not render the judgement of the DHO "constitutionally infirm." *Davis v. Bragg*, No. EP-10-cv-288-FM, 2011 WL 1868382, at *4, n.32 (W.D. Tex. May 13, 2001) (citation omitted) ("mere fact that the phone was found in an area accessible to other inmates does not render a disciplinary finding that the inmate possessed contraband constitutionally infirm"). Inmates with common living quarters can be held responsible for contraband found in the living quarters even if the living quarters were accessible to other inmates. *See Flannagan v. Tamez*, 368 F. App'x 586, 588 n.6 (5th Cir. 2010). Thus, just because other inmates shared Petitioner's living space and had access to it, the DHO was not precluded from finding that Petitioner had "constructive possession" of the rope. *See Id.* Further, prison rules provide that it is the inmate's responsibility to "keep [his] area free of contraband." Program Statement 5270.09, *Inmate Discipline Program*, p. 39; Doc. 1 at 13.

Again, in determining that the "some evidence" standard is met in this case, this Court does not weigh the evidence. *Hill*, 472 U.S. at 454-56. Moreover, there is no basis to conclude that the DHO's decision was arbitrary or capricious, *Reeves*, 19 F.3d at 1062, especially in light of the undisputed evidence that the contraband was found under Petitioner's mattress.

5

*Petitioner has failed to establish he was deprived of constitutionally adequate representation*

Petitioner also contends that his staff representative failed to interview other inmates and to review camera footage of Petitioner's cell, depriving him of an adequate defense to the charges, despite his request that she do so. Doc. 1 at 7. Again, his allegation is belied by the record.

First, there is no evidence to suggest that Petitioner asked Hill, his designated staff representative, to review the footage or interview witnesses on his behalf. Doc. 1 at 16. On the contrary, the evidence clearly indicates that Petitioner merely asked Hill to confirm he was at work at the time of the incident in question and that she fulfilled that request. Doc. 1 at 16. The veracity of his assertion that he made such a request is further refuted by the fact that Petitioner stated at the start of the DHO hearing that he was ready to proceed. Doc. 1 at 19, § V. Despite the importance Petitioner now attaches to Hill's failure to review the video footage and interview various inmates, there is no record of him ever requesting at any point during the hearing more time to obtain such evidence. *See Martinez,* 653 F. App'x at 836 (the petitioner "provides no valid explanation for his failure to request more time to obtain evidence").

Second, assuming *arguendo* that such a request had been made, Hill's failure to comply did not amount to a deprivation of Petitioner's right to due process. Petitioner's right to a representative is not akin to a constitutional right to counsel or, by extension, the effective assistance of counsel, and he offers no authority for that proposition. Indeed, Petitioner had no right at all to legal counsel at the DHO hearing. *See Wolf*, 418 U.S. at 570 (the injection of counsel into the proceedings would tend to "…reduce their utility as a means to further correctional goals"). However, *Wolff* does prescribe that an inmate have the ability to request the

6

assistance of a staff member or fellow inmate when the inmate is illiterate or if the issue is so complex that an inmate will be unlikely to collect and present the evidence. *Id.*. While there is no evidence that Petitioner was illiterate or otherwise faced a burdensome task of gathering and presenting evidence and, thus, had a right to such assistance at the DHO hearing, he was provided it nevertheless. Under these circumstances, his staff representative's failure to review footage and interview inmates could not have resulted in a denial of the right to due process guaranteed by the United States Constitution. *Cf. Martinez*, 653 F. App'x at 836 (holding that staff representative's failure to request a continuance was not denial of due process).

Finally, Petitioner contends that the DHO "wrongfully enhanced" his disciplinary sanctions. Doc. 1 at 3. As best as the Court can decipher, Petitioner complains generally that the sanctions imposed by the DHO upon the finding that he violated the prohibition against possessing a homemade rope, unlawfully prolonged his sentence. Doc. 1 at 3. Petitioner's argument finds no support in fact or law.

Good-time awards do not affect the length of a court-imposed sentence and such credits "may be revoked at any time before the date of the prisoner's release." *Pepper v. U.S.*, 562 U.S. 476, 501 n. 14 (2011) (citation omitted). Good-time credits are administrative awards "to provide an incentive for prisoners to 'comply with institutional disciplinary regulations.'" *Barber v. Thomas*, 560 U.S. 474, 475 (2010) (quoting 18 U.S.C. § 3624(b)). The award of good-time credit does not shorten the court-imposed sentence, and the forfeiture of good-time credit does not extend the sentence imposed by the court. Thus, the expiration date of the sentence imposed by the Court Petitioner's case was and still is November 5, 2019, and Petitioner cannot show that this date was extended as a result of the DHO's action.

## RECOMMENDATION

Based on the foregoing, it is recommended that the petition for writ of habeas corpus be **DENIED**.

**SIGNED** March 29, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE